KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
December, 1880.

## DEMMERT *v.* SCHNELL.

### *In the matter of the probate of the last will and testament of* JOHN DEMMERT, *deceased.*

Where a person enfeebled by old age or illness makes a will in favor of another person upon whom he is dependent, and that will is at variance with a former will made, or intentions formed, when his faculties were in their full vigor, and is opposed to the dictates of nature and justice, the presumption is that such a will is the result of undue influence, unless that presumption is satisfactorily rebutted by other evidence in the case.

The testator, a tenant of Mrs. S., and living in the same house with her, was dying of a very painful disease, which rendered him entirely helpless. Mrs. S. took charge of him during his illness, and he was entirely dependent upon her. Prior to his sickness he had repeatedly expressed his intention of leaving his property to his brothers in Germany, and although Mrs. S. had often asked him, in jest, to make his will in her favor, he had never given her any encouragement that he would do so, but, on the contrary, had declared such an idea preposterous so long as he had brothers living. While sick and dependent upon Mrs. S., testator made a will leaving one-third of his property to Mrs. S. and the remainder to his brothers. Two days thereafter he made another will omitting the bequest to his brothers, and making Mrs. S. the residuary legatee. A fortnight later, and only two days before his death, testator made a third will, in all respects like the second, except that he gave a small legacy to each of Mrs. S.'s children. The wills were drawn according to the testator's personal instructions. *Held,* that the circumstances raised the presumption that the third will was obtained through undue influence, although there was no direct proof of Mrs. S.'s having exerted such influence over the testator, and that probate of the will must be denied.

APPLICATION for the probate of a will. The facts appear sufficiently in the opinion.

CHARLES L. LYON, *for proponents.*

FISHER, HURD & VOLTZ, *for contestants.*

THE SURROGATE.—The probate of this will must be denied on the ground that it was obtained through the undue influence of Mrs. Schnell, the residuary legatee.

The testator was dying of a very painful disease. He was a tenant of Mrs. Schnell's, occupying part of the same house with her. The housekeeper who had lived with him for nine years had left him, finding that she was unequal to the task and burden of taking care of him, and he was thus left entirely alone, absolutely dependent on Mrs. Schnell, not only for the care and attention so essential to him in his illness, but even for the necessaries of life, as he was entirely helpless.

He was married, but his wife had not lived with him for nine years, and he did not even know where she was. While in health he had repeatedly expressed the intention of leaving his property to his brothers in Germany. Mrs. Schnell had often asked him in jest to make his will in her favor, but he never appears to have given her any encouragement that he might do so; on the contrary, according to the witness, Bremer, he considered the idea of leaving Mrs. Schnell anything, when he had brothers in Germany, preposterous, and never entertained such a thought. Mrs. Schnell herself testifies that he told her that he would leave his money to his brothers in Germany or take it there with him when he went back.

Very soon after Mrs. Bremer had left Demmert, Mr. Kelback, a friend of his, and one of his executors, called on Mr. Kleinlein to get him to draw Demmert's will. This was on October 8. Although the testator had then been ill since September 11, he was well enough to get up and walk to the table where the will was signed. Kleinlein

accompanied Kelback to Demmert's residence, and there drew a will according to instructions received from Demmert, as I understand it, whereby Demmert left one-third of his property to Mrs. Schnell, and the greater part, or the whole of the balance to his brothers in Europe.

This will is alleged to have been then and there executed by Demmert in the presence of Kelback and John Eberhardt as witnesses. It may be that the legacy of one-third of his property to Mrs. Schnell was inspired by a feeling of gratitude towards her on finding that she was willing to assume the care of him after Mrs. Bremer ' had left, or by a desire to compensate her for the trouble and disagreeable task which he knew she would have; but as I am not now called upon to pass upon the validity of that first will, it is unnecessary to express any opinion about it.

Two days later, on October 10, Kleinlein was informed by Eberhardt that Demmert desired to change his will, and for the first time learned that Demmert had a wife living. Kleinlein seems to have thought that the law required a husband to make provision in his will for his wife, and so when he went to Demmert's, on October 10, to draw a second will for him, he said to Demmert, "How is this, I was not notified you had a wife the first time. . . . . You can't do that, you will have to put the wife in." Demmert objected that his wife had left him nine years before that time, and Kleinlein was puzzled to know what to do. He said, "I don't know what to do now; the best thing is to get it in the hands of the court, if the court will say that you have the right to give her nothing." The result was that the second

will bequeathed to Demmert's wife one-third of his property if the law gave it to her, and if it did not then he did not wish her to have anything.  It is claimed on behalf of the wife, that Demmert's intention was to give her, by his will, what the law secured to her if he died intestate; but I do not so understand the testimony.

There was, however, another departure from the first will in the second one.  The bequests to the testator's brothers in Germany were omitted, and Mrs. Schnell was made residuary legatee, so that the bequest to her was greatly increased.

This change was in opposition to the repeated declarations of the testator while in good health, in contradiction of a will executed by him only two days before, inconsistent with the claims which his brothers naturally had upon him and which he acknowledged, but in accordance with the thought which had suggested itself to Mrs. Schnell to get him to make his will in her favor.  That she entertained this thought appears by her repeated requests to him to that effect, though apparently made in jest.  The will was made at a time when the testator was seriously ill, suffering from a painful disease; so weak physically that he had to be assisted out of bed, and when his complete dependency upon Mrs. Schnell readily subjected him to her control.  Here we have all the facts and circumstances by which the courts say that undue influence may be proved. (Rollwagen v. Rollwagen, 63 N. Y., 519; Horn v. Pullman, 72 Id., 269, 276; Forman v. Smith, 7 Lans., 443; Marvin v. Marvin, 3 Abb. Ct. App., 192; Children's Aid Society v. Loveridge, 70 N. Y., 387, 403; Reynolds v. Root, 62 Barb. 250; Mowry v. Silber, 2 Bradf., 133.)

It does not appear that the testator gave any reason for this sudden change in the disposition of his property, and the circumstances under which it was made required that Mrs. Schnell should show that the complete dependence of this dying man upon her had not been taken advantage of in any way—should, in fact, repel the presumption arising from the facts proved that the change was brought about by undue influence. (1 *Wms. on Ex'rs*, p. [48] note ; Mowry *v.* Silber, 2 *Bradf.*, 133 ; Tyler *v.* Gardiner, 35 *N. Y.*, 559 ; McLaughlin *v.* McDevitt, 63 *Id.*, 213, 220 ; Forman *v.* Smith, 7 *Lans.*, 214 ; Lee *v.* Dill, 11 *Abb. Pr.*, 214 ; Matter of Welsh, 1 *Bradf.*, 238 ; Kinne *v.* Johnson, 60 *Barb.*, 69.)

The rule to be deduced from the decisions on the subject is this : that where a person enfeebled by old age or illness makes a will in favor of another person upon whom he is dependent, and that will is at variance with a former will made, or intentions formed when his faculties were in their full vigor, and is opposed to the dictates of nature and justice, the presumption is that such a will is the result of undue influence, unless that presumption is satisfactorily rebutted by other evidence in the case.

On October 26, two days previous to the testator's death, Kleinlein was again sent for to draw a third will for Demmert ; the change he desired to make this time consisted in giving a legacy of $100 to Mrs. Schnell's son, John, and another legacy of the same amount to her daughter ; otherwise the third will was to be the same as the second one.

This third will is the one now offered for probate. It was properly executed, and I am not prepared to say

that the testator did not have testamentary capacity, although he was so weak that he could not sign his name, and was within two days of the fatal termination of a painful illness which had lasted over six weeks.

But we find in it the same inofficious provisions which, as we have seen, may fairly be attributed, on the evidence, to undue influence exerted at a time when the testator was far better able and more likely to resist control than when this third and last will was executed ; it must therefore be held that the same undue influence which made Mrs. Schnell sole residuary legatee, to the exclusion of the testator's brothers, in the second will, was still all-powerful, and at work securing the same results in the third will.

It is true that the proof shows that the will was drawn according to the instructions given by the testator ; but in cases of this kind proof of instructions given amounts to nothing or very little, for, as was well observed by Lord Chief Justice WILMOT in Bridgman *v.* Green, cited in Tyler *v.* Gardiner (35 *N. Y.*, 596): " In cases of forgery, instructions under the hand of the person whose deed or will is supposed to be forged, to the same effect with the deed or the will, are very material ; but in cases of undue influence and imposition they prove nothing, for the same power which produces one produces the other." (See also Mowry *v.* Silber, 2 *Bradf.*, 133, 150.)

Neither is there any direct proof that Mrs. Schnell exerted undue influence over the testator ; but that is not necessary ; it is sufficient if facts are proved from which undue influence may be legitimately inferred, in the absence of sufficient explanation. (McLaughlin *v.* McDevitt, 63 *N. Y.*, 213, 220 ; Children's Aid Society *v.*

Loveridge, 70 *Id.*, 387, 395 ; Rollwagen *v.* Rollwagen, 63 *Id.*, 504, 519 ; Brick *v.* Brick, 66 *Id.*, 144, 149 ; Coit *v.* Patchen, 77 *Id.*, 533, 540.)

The application to admit the will to probate is denied.

Ordered accordingly.