(162 App. Div. 156)

## NORTH SIDE BANK OF BROOKLYN v. QUEENS HOME REALTY &. CONSTRUCTION CO. et al.

(Supreme Court, Appellate Division, Second Department.   April 24, 1914.)

MORTGAGES (§ 567*)—FORECLOSURE—DISPOSITION OF PROCEEDS AND SURPLUS.
   A guarantor, by paying interest on a first mortgage debt, does not thereby acquire an equity for such payments out of surplus moneys as against a second mortgage.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1632–1638; Dec. Dig. § 567.*]

Appeal from Special Term, Queens County.
Action by the North Side Bank of Brooklyn against the Queens Home Realty & Construction Company and others. From an order directing the disposition of surplus moneys after a judgment and sale in foreclosure, Alexander S. Burns appeals. Reversed, with directions.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

R. Leslie Smith, of New York City, for appellant.
. Paris S. Russell, of New York City (John Ingle, Jr., of New York City, on the brief), for respondents.

PUTNAM, J.   The Queens Home Realty & Construction Company, on June 10, 1908, gave a first mortgage to the Broadway-Flushing Development Company which was foreclosed in this suit. On June 10, 1909, it gave a second mortgage for $10,000 to Mr. Burns, on which $7,812.50 remains due. On October 15, 1909, Peace Bros. took over the first mortgage, with an unrecorded guaranty of its payment, from the Rickert-Finlay Company. Peace Bros. then assigned this mortgage as collateral security to the plaintiff. Thereafter the Rickert-Finlay Company, as guarantors, made two interest payments on this first mortgage, amounting to $269.33. The foreclosure sale under this first mortgage in 1913 left a surplus of $2,171.47. In these surplus proceedings, the Rickert-Finlay Company claimed a preference as to this $269.33 over the second mortgage to Mr. Burns. The referee, however, disallowed this, and reported in favor of the second mortgagee. The Special Term reversed, taking the view that this interest payment had pro tanto increased the surplus.

This appeal raises the question whether a guarantor, by paying interest on the first mortgage debt, thereby acquires an equity for such payments out of surplus moneys as against a second mortgagee. Before such payments may be revived as a subsisting lien against surplus proceeds, regard must be had to the situation of the junior incumbrancer. After the foreclosure sale, a second mortgagee presenting his mortgage to the referee in the surplus proceedings is confronted by an accumulation of back interest upon the indebtedness supposed to have been finally extinguished by the foreclosure. The equity of the junior incumbrancer is obvious. Thus interest coupons taken up and held by bankers, and later presented as outstanding liabilities, cannot

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

postpone the remedy of subsequent lienors, who have not assented to keeping alive such payments. · Such advances of interest from guarantors or financial agents, by holding off the primary foreclosure, give no ground afterwards for the displacement of junior liens. Such attempted subrogation may avail against the debtor (Union Trust Co. v. Monticello & P. J. R. Co., 63 N. Y. 311, 20 Am. Rep. 541), but not as against the superior equity of junior incumbrances (Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Bockes v. Hathorn, 20 Hun, 503; Knickerbocker Trust Co. v. O., C. & R. S. R. Co., 138 App. Div. 687, 123 N. Y. Supp. 822).

I advise that the order of the Special Term be reversed, with $10 costs and disbursements, and that the referee's report be confirmed, with $10 costs. All concur.

