(121 App. Div. 420.)

### HANNA v. PITT & SCOTT, Limited.

(Supreme Court, Appellate Division, Second Department.   October 11, 1907.)

CARRIERS—CARRIAGE OF GOODS—DUTY OF SHIPPER TO STATE TRUE WEIGHT.

It is not a part of the implied contract of shipment that a shipper should declare the true weight of an article shipped, and a shipper is not liable for negligence in understating the weight of an article of obvious nature, where an injury occurs because the tackle used in unloading it is insufficient, though adequate for the weight stated.

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Action by William E. Hanna against Pitt & Scott, Limited. From an order overruling a demurrer to plaintiff's complaint, defendant appeals. Reversed, with directions.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Thomas A. Stoddart, for appellant.

Norman B. Beecher, for respondent.

HOOKER, J.  The complaint alleges that the defendant, a corporation, delivered to the plaintiff's assignors, the Oceanic Steam Navigation Company, at New York City, a piece of machinery for transportation to Liverpool, England, and reshipment thence to Oporto, Portugal, and represented at the time of such shipment that the said piece of machinery, together with the timber in which it was packed, did not weigh more than 9,000 pounds, whereas the true weight was more than 19,000 pounds, and that the defendant in making said false representation acted negligently and carelessly; that, relying on said statements, the plaintiff's assignor furnished to its servants in Liverpool appliances for unloading the machinery which would safely stand a strain of more than the 9,000 pounds represented, to wit, a strain of 14,000 pounds, but which were insufficient appliances for lifting 19,000 pounds; that part of this discharging tackle broke while the machinery was being unloaded, which break was caused solely by the strain of the great and unforeseen weight of said machinery, and this accident caused personal injury to a stevedore, who was engaged in the unloading and who was exercising due care; that the stevedore became entitled to recover damages from the plaintiff's assignor on account of his injury, and that in settlement of his claim the plaintiff's assignor has been obliged to pay, and has paid, the stevedore a sum in settlement which was reasonable for that purpose.  The complaint also alleges the assignment of the cause of action to the plaintiff, and demands judgment against the defendant for the sum paid by the plaintiff's assignor to the stevedore in settlement of his claim for personal injuries.

Neither the briefs of counsel nor our own somewhat extended research have disclosed any authority upon the question raised by this appeal, either in this country or in England.  It is entirely apparent that the complaint does not state a cause of action, unless it be one for negligence, and then only upon the theory that the defendant has omitted

106 N.Y.S.—10

to perform some general or contractual duty it owed to the plaintiff's assignor, or negligently performed that duty. The contract of shipment is not set forth in the complaint, and hence we must presume that it contains such implied terms as the law reads into contracts of that nature.

The first question which should be determined in reaching a decision is whether there was an implied term of the contract that the defendant should disclose to the plaintiff's assignor the weight of this bulky piece of machinery. The cases have never gone to the·extent of holding that such a duty rested upon the shipper. The duty of the shipper and the obligation of the carrier have been noticed in cases arising where articles of a dangerous nature have been shipped. In Brass v. Maitland, 6 Ell. & Bl. 470, a corrosive substance was packed in casks and delivered to the plaintiff as bleaching powder, to be carried in a ship. The plaintiff was ignorant that bleaching powder contained a corrosive substance, and the casks appeared outwardly to be sufficient. The corrosive substance escaped and destroyed the cargo; and Lord Campbell, in pronouncing judgment sustaining the declaration, said:

"Where the owners of a general ship undertake that they will receive goods and safely carry them and deliver them at the destined port, I am of opinion that the shippers undertake that they will not deliver, to be carried in the voyage, packages of goods of a dangerous nature, which those employed on behalf of the shipowner may not on inspection be reasonably expected to know to be of a dangerous nature, without expressly giving notice that they are of a dangerous nature."

In Farrant v. Barnes, 11 J. Scott (N. S.) 353, 362, the language of Lord Campbell in the Brass Case, supra, was quoted, and the principle approved. See, also, Williams v. East India Company, 3 East, 192, and Alston v. Herring, 11 Exch. 822.

In Pierce v. Winsor, 2 Sprague, 35, Fed. Cas. No. 11,151, mastic shipped in cakes ran together and adhered to the sides of the ship. The character of mastic was not generally known, and it was not understood by the carrier. Sprague, J., sitting in the District Court of the United States for the District of Massachusetts, said:

"In Brass v. Maitland, 6 Ellis & B. 470, the Chief Justice evidently took the view that the shipper of goods in a general ship impliedly contracts that the goods shipped shall not be injurious to other goods shipped in the usual course of lading a ship. * * * This principle is a sound one. It throws the loss upon the party who generally has the best means of informing himself as to the character of the articles shipped. * * * This case is not between the shipper and the shipowner; but the rule applies equally well to the case of a charterer."

See, also, Standard Oil Company v. Tierney, 92 Ky. 367, 17 S. W. 1025,.14 L. R. A. 677, 36 Am. St. Rep. 595; B. & A. R. R. Co. v. Shanly, 107 Mass. 568.

The rule as finally deduced in Hutchinson on Carriers (3d Ed.) § 798, is this:

"In every shipment there is an implied contract on the part of the shipper that his goods are not of such character as to cause injury to other goods, and that, no matter how innocent or how ignorant he may have been of their real character, the law will impute to him knowledge of the fact, inasmuch as he has had a better opportunity of acquiring it than any other person."

It is to be noticed that the obligation which rests upon a shipper to declare the nature of his goods only obtains in cases where the carrier has not means of knowledge, or where he may not upon inspection of the goods discover for himself their true character. In the case at bar the plaintiff's assignor was a common carrier, evidently accustomed to transporting freight of all kinds upon the high seas; and it is entirely reasonable to suppose that it could judge as easily as the defendant of the weight of this bulky piece of machinery. In any event the nature of the article shipped was entirely obvious, and was in no sense of a dangerous character, so that the rule requiring the shipper to disclose its character does not obtain. Because the carrier was able to recognize the character of the shipment and itself judge of the proper means to deal with it, I think it was not part of the implied contract of shipment that the shipper should declare its true weight; and hence the failure of the shipper to do so was not the breach of a duty it owed the carrier, and the shipper was not guilty of negligence.

A further phase of the question is presented by the allegation of the complaint that the defendant represented the weight to be 9,000 pounds; but inasmuch as no duty rested upon the defendant to declare the weight, and inasmuch as the carrier might readily have determined the weight itself, the defendant's statement of the weight was nothing more than a mere expression of an opinion, which the carrier might use as it saw fit, but certainly had no right to rely upon at the defendant's peril.

Further research since writing the above has disclosed the case of Baily v. Merrell, 3 Bulst. 94, which was an action by carrier against shipper, where the latter had represented goods to be of a given weight, and where the plaintiff's horse had been injured in drawing them because they were of much greater weight. It was there held that an action would not lie against a shipper, because the carrier might judge and could ascertain the true weight of the goods; and it has been said that this case has been authority for the proposition that a carrier has no right to expect any communication respecting the nature of the goods, where he himself may easily discover it.

Our conclusion is, therefore, that the complaint does not state a cause of action, and that the judgment overruling the defendant's demurrer must be reversed, and the demurrer sustained, with leave to plead over upon the usual terms.

Judgment of the Municipal Court overruling the defendant's demurrer reversed, with costs, and demurrer sustained, with leave to plead over upon payment of costs. All concur.